[Crim. No. 11438. Fourth Dist., Div. One. Apr. 22, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON VIDRIOS BALDERAS, Defendant and Appellant.

## COUNSEL

Alden J. Fulkerson, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GREER, J.*—Defendant Ramon Vidrios Balderas appeals an order committing him to the Department of Mental Health for an additional year pursuant to section 6316.2 of the Welfare and Institutions Code. This proceeding followed the Supreme Court decision of *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097]. Defendant asserts error and argues the *Moye* decision's provisions for extending his commitment are inapplicable to him. The basic contention of the defendant is twofold, one pragmatic and one based upon a constitutional principle. The factual argument is that on October 17, 1978, (the day the *Moye* decision was filed) he had served the maximum time in the

*Assigned by the Chairperson of the Judicial Council.

hospital required by law and thus the extended commitment procedures of the Welfare and Institutions Code adopted by *Moye* could not be appropriately applied.[1] The constitutional argument seems to be the California Supreme Court acted improperly in its *Moye* decision by judicially legislating a commitment program and thus violating the constitutional doctrine of separation of powers.

### Factual and Procedural Background

In 1973, defendant was found not guilty by reason of insanity of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and was committed to a mental hospital (Pen. Code, § 1026). On October 27, 1978, 10 days following the *Moye* decision, he filed a petition for habeas corpus in the superior court, claiming he had been in custody beyond the maximum term allowable for his crime. Without disputing this the People opposed releasing defendant before the Community Release Board[2] had a reasonable amount of time to process all the inmates affected by the Supreme Court's decision.[3] They further argued the determination of the maximum term was left by the mentally disordered sex offender (MDSO) statutes to the Community Release Board, not the courts.[4] The superior court disagreed, determined defendant had served a term beyond the maximum term, and ordered his release from custody. The order was stayed 15 days to allow the People to bring civil commitment proceedings under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.). The People sought a writ of mandate in this court (4 Civ. No. 18621) alleging the superior court had abused its discretion in granting defendant's immediate release before the People had a chance to administratively process all the inmates affected by *Moye*. This court granted a temporary stay of defendant's release. After two trials on July 20, 1979, defendant was committed to the Department of Mental Health for an additional one year and this matter proceeded on appeal.

---

[1]It has been determined defendant's term of confinement ended March 2, 1977.

[2]Now the Board of Prison Terms.

[3]When the MDSO statutes were first enacted, the court in *People v. Superior Court (Rigg)* (1978) 80 Cal.App.3d 407 [145 Cal.Rptr. 711], held the limitations of the Welfare and Institutions Code section 6316.2 did not apply to persons committed as MDSO before 1977 for indeterminate terms. They there held that petitions within six weeks of the board fixing the "maximum term" dates was timely absent some showing of prejudice to the committed person by brief delays.

[4]In May 1979, *People v. Wadsworth* (1979) 92 Cal.App.3d 978 [155 Cal.Rptr. 330], held that if the term had not been predetermined at the time of the extended commit-

Counsel for Balderas concedes in his opening brief, "Balderas was and is insane and has not at present regained his sanity (it is immaterial in this case as to what rule of law or definition of insanity is applied).... [He] is and probably will continue to be dangerous to the safety of others... [and gives as examples] several physical attacks on the inmates; attempted stabbing of counselor with scissors; throwing a hotplate at a deputy sheriff, etc."[5]

Based upon this background Balderas requests this court to order his discharge. We decline to do so for the reasons set forth below.

*Class Affected by Moye*

*In re Moye, supra*, 22 Cal.3d 457 holds: "...well established constitutional principles of equal protection require that the duration of institutional confinement of [persons committed to the Department of Health following acquittal of criminal charges because of insanity] cannot exceed the maximum term for the underlying offense, unless the People...establish grounds for an extended commitment,...." (P. 460.)

The extended commitment proceeding established by *Moye* was patterned after the mentally disordered sex offenders' proceeding of section 6316.2 of the Welfare and Institutions Code. The court said: "To the extent practicable, and in the absence of further legislation on the subject, the procedure for the extended commitment of persons committed following their acquittal on the ground of insanity should conform to the procedures specified in section 6316.2 of the Welfare and Institutions Code." (P. 467.)

On September 28, 1979, urgency legislation became effective setting out procedures to be followed in all prospective extended commitment proceedings (Pen. Code, § 1026.5). The only substantial difference between section 6316.2 of the Welfare and Institutions Code as it existed

---

ment hearing by the Community Release Board the court was required to determine the maximum time.

[5]The proper test to determine whether the person committed is sane is to determine whether he has improved to the extent that he is no longer a danger to the health and safety of others, including himself (*In re Franklin* (1972) 7 Cal.3d 126, 145 [101 Cal.Rptr. 553, 496 P.2d 465]).

in 1978 and Penal Code section 1026.5 as it now exists is that the extended commitment shall be for two years.[6]

This decision thus affects only a limited class of people; those who under *Moye* became eligible for release because they had completed their required maximum institutional confinement as of September 28, 1979. Defendant falls within this class.

*The Trial Court Had the Jurisdiction to Try the Issue Raised by the People in Their Petition for Extended Commitment*

A close reading of the Supreme Court's decision in *Moye, supra,* demonstrates their appreciation of the necessity to protect both the public and the individuals involved in this special class. The court states: "'[W]e agree with the Supreme Court of Maine, in *Chase [Chase v. Kearns* (Me. 1971) 278 A.2d 132], that "The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger." (278 A.2d at p. 138.)' (7 Cal.3d at pp. 146-147; see also Note (1973) 24 Hastings L.J. 487, 509 [burden of proof allocation under Pen. Code, § 1026a is 'another measure of the greater precautions surrounding the handling of persons acquitted by reason of insanity, in order that the public interest may be protected'].)" (*In re Moye, supra,* 22 Cal.3d 457, 462-463.)

Thus *Moye* carefully selected a structure to protect both individual and public rights. ■ Principles of equal protection require release at the time the individual's maximum term expires subject to a procedure to protect the public interest based upon existing sections of the Welfare and Institutions Code. These procedures would provide for the extended commitment of persons when there would be a danger to the health and safety of themselves or others. Section 6316.2 would grant to the individual all the necessary due process rights for this procedure.

■ Balderas argues where, as here, a defendant is entitled to release as of the date of the *Moye* decision, the trial court lacks inherent juris-

---

[6]Welfare and Institutions Code section 6316.2 as it now exists also provides for a two-year extension.

diction to try the issue of the necessity for the extended commitment. We cannot accept his premise.

*Moye* clearly recognized the problem addressed by Balderas and answered it by saying: *"To the extent practicable,...* the procedure for the extended commitment of persons committed following their acquittal on the ground of insanity should conform to the procedures specified in section 6316.2 of the Welfare and Institutions Code." (Italics added.) (22 Cal.3d 457, 467.)

Webster's Third New International Dictionary Unabridged, defines practicable as "possible to practice or perform; capable of being put into practice; capable of being used."

The court recognized that in some instances the procedural notice requirements of Welfare and Institutions Code section 6316.2 could not be followed exactly. It was also obvious to the Supreme Court the appropriate agency could not begin the process of the extended hearing procedure before the necessity for such a process had been brought into existence by the *Moye* decision itself.

As a practical matter civil commitment proceedings under the LPS Act simply do not provide adequate protection against premature release of dangerous persons to society. This was recognized by *Moye* and for that reason the Supreme Court provided for an extended hearing under the Welfare and Institutions Code.[7]

Here legal proceedings were initiated by Balderas on October 27, 1978, the district attorney waged a procedural battle to file his "Petition For Extension Of Commitment Of A Person Found Not Guilty By Reason Of Insanity" by February 20, 1979. In light of the many obstacles put in their path, we find the People proceeded in a timely manner.

*The Constitutional Attack*

---

[7]It is clear under the LPS Act recommitment for violent behavior is limited to 90 days. In addition, such limited recommitment in a secured facility may not be attained unless during the preceeding 90-day period the individual has attempted or actually inflicted harm on another person. (Welf. & Inst. Code, § 5304) as noted by the trial judge, defendant was then being held separate from others to prevent such attacks. Thus the ironic situation arises wherein the defendant would have to be afforded the opportunity to harm others before his continued detention could be accomplished under the LPS Act.

■ Finally Balderas argues the utilization of section 6316.2 of the Welfare and Institutions Code as a procedure for extended commitment hearings violates the constitutional doctrine of separation of powers.

This argument can be most effectively answered by a citation to *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] where the Supreme Court states: "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense." (P. 455.)

It is also noteworthy where, as in *Moye*, the Supreme Court is faced with the necessity of providing protection for an improperly distinguished class it must often improvise based upon existing legislation and provide the Legislature with the opportunity to consider more appropriate measures. The same process was adopted in *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549], to accomplish the granting of precommitment credits to minors and in *People* v. *Sage* (1980) 26 Cal.3d 498 [162 Cal.Rptr. 450, 606 P.2d 757], to protect the interest of pretrial detainees. In both cases existing statutory procedures were utilized as structures to grant to the individual the equal protection of law.

The *Moye* decision has granted the same protection to this defendant and all his constitutional rights were protected by the courts of this state at all levels.

Order affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 7, 1980, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1980.