[Crim. No. 40274. Second Dist., Div. Two. Aug. 13, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WESTON J. HILL, JR., Defendant and Appellant.

**COUNSEL**

Mary J. Madsen, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Edward T. Fogel, Jr., and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**GATES, J.**—Weston Hill appeals from the order extending his commitment under Penal Code section 1026.5. ■ He contends: "The motion to dismiss the extended commitment proceedings for lack of timely filing/hearing of the petition should have been granted."

In 1976 appellant was committed to a state hospital for treatment pursuant to section 1026 of the Penal Code after he had been found not guilty of felonious assault (Pen. Code, § 245, subd. (a)) by reason of his insanity. The terminal date of his potential confinement was later determined to be December 28, 1980. Therefore, in order to comply with the 90-day/30-day time limitations prescribed by Penal Code section 1026.5[1] it was necessary that any petition seeking to extend his confinement be filed not later than September 26, 1980, with trial thereon to commence not later than November 28, 1980.

The legislative objective in establishing these statutory limitations is clear, i.e., to allow a committee-patient and his counsel not less than 60 days to prepare for trial, and 30 days within which to complete such trial, without confining him beyond the maximum period permissible under his initial commitment. (See generally *In re Moye* (1978) 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097]; *People v. Poggi* (1980) 107 Cal.App.3d 581, 586 [165 Cal.Rptr. 758]; *People v. Balderas* (1980) 104 Cal.App.3d 942, 947 [164 Cal.Rptr. 275]; *People v. Lakey* (1980) 102 Cal.App.3d 962, 979 [162 Cal.Rptr. 653]; *People v. Superior Court (Rigg)* (1978) 80 Cal.App.3d 407, 415 [145 Cal.Rptr. 711].) Unfortunately, the present petition seeking an extended commitment for our appellant was only prepared and filed on December 18, 1980, and a public defender was first appointed to represent him the following day, Friday, December 19, 1980, when only five court days,

---

[1]"Such petition *shall* be filed no later than 90 days before the expiration of the original commitment." (Pen. Code, § 1026.5, subd. (b) (2); Italics added.) "The trial *shall* commence no later than 30 calendar days prior to the time the person would otherwise have been released, *unless such time is waived by the person.*" (*Id.*, subd. (b) (4); italics added.)

and seven meaningful calendar days, remained before he was entitled to be discharged.

When appointed counsel protested this total violation of the time limitations established in the very section that authorized any such extended confinement, the court demanded that she establish *specifically* why she felt she could not immediately begin a jury trial and complete it before appellant's release date. This showing was demanded despite the fact counsel had never previously met appellant, his medical reports were not available, and, of course, he had not as yet been examined by the required psychiatrists since these experts had not even been appointed. (Pen. Code, § 1027.) Purportedly to give her time to gather her proofs in this respect, the court then continued the matter for formal arraignment and the appointment of the requisite examining doctors to Tuesday, December 23, 1980, only three court days before appellant's permissible confinement expired.

When on the 23d, appellant's counsel again indicated that she was not, and could not possibly be, prepared for a trial to start and end that very week; the court nonetheless insisted on proceeding stating, "We have any number of cases that come into this court in which Public Defenders and other defense lawyers are able to handle the case, having spoken with their client, having reviewed the records, *if called on the same day.*" (Italics added.)

While there may be attorneys extant who are so blessed with uncommitted time and the intellectual quickness to remain steadily mounted during such an instance of galloping justice, we cannot fault the particular public defender appointed for this appellant for her acknowledged inability to do so.[2]

As a consequence of the court's ruling this matter was continued from time to time as required by appellant and his counsel until March 2, 1982.[3] During this period, appellant was not only incarcerated be-

[2]Our determination in this respect is quite apart from the dim view we take of the quality of the examination and testimony that an expert witness appointed on a Tuesday could be expected to give to a jury whose decision was due that Friday.

[3]Perhaps the most sad and ironic aspect of this entire proceeding arose when the People objected to virtually all these continuances sought by appellant's counsel in her efforts to secure him at least some of the 60 preparatory days that were his statutorily mandated due. Before the court would afford him even these prescribed rights, it required appellant to proclaim aloud his "waiver" of his "right" [*sic*] to be sooner forced to trial before he was ready.

yond the maximum permissible period, for a time he was even imprisoned in a county jail (see generally *In re Lee* (1978) 78 Cal.App. 3d 753 [144 Cal.Rptr. 528]), where, apparently because he had not been confined in the medical section of that facility as the court had ordered, he did not receive his prescribed medication, thereby necessitating further continuances.[4]

We are convinced that it was exactly this type of unseemly haste, and *unnecessary confinement prior to proof*, that led to the enactment of the time limitations specified in section 1026.5. We wish to stress, however, that in so holding we do not quarrel with the result reached by the court in *Johns v. Superior Court* (1981) 119 Cal.App.3d 577, 581 [175 Cal.Rptr. 443]. There, although the initial petition was filed 17 days beyond the 90-day time limit, the hearing was actually conducted before the committee-patient's permissible period of confinement had elapsed and on a date which had permitted his counsel as much time to prepare therefor as would have been true if the petition had been timely filed, i.e., over 60 days.

Our present situation is more akin to that considered in *People v. Pacini* (1981) 120 Cal.App.3d 877 [174 Cal.Rptr. 820]. There the initial petition was filed after the maximum period of the committee's confinement had expired. The court concluded that all proceedings thereafter conducted were void. While it is true that a few court days yet re-

---

[4]When appellant appeared in court on February 23, 1981, the court observed:
"I think the record should reflect that Mr. Hill was sitting there with his body twitching in a way that I have not seen in the last—well, he has been here I don't know how many times and I have never seen that.

". . . . . . . . . . . .

"Mr. Hill allegedly, according to the allegations of the District Attorney's office, is suffering from a mental disorder to begin with. He has clearly, to my observation, decompensated, if that is the word you want to use. His condition has deteriorated since he was here Thursday. Being that he has made many appearances in the court previously, the only thing I can attribute it to is the failure of the Sheriffs' Department to carry out the court's order, which would have had him continued on medication.

"This may or may not be true, but the inference is that that was the problem. I think it would be an unwarranted intrusion in a way to have Mr. Hill tried in worse shape than he should be in because of the failure of our system to carry out the intent of keeping him in good medical shape.

"The only reason that I granted the People's motion to house him in the forensic in-patient unit was because I knew he would get treatment there.

"The People have no right under the Lee case to have Mr. Hill in jail. If not for the forensic in-patient unit he would have had to be returned to one of the state hospitals while the trial is pending, whether he is dangerous or not. Dangerous or what have you, the law apparently is clear that he could not be housed in the jail.

"I don't think he should be forced to be tried in this condition and therefore I am going to grant the continuance for a week. That would be the 2nd of March, 1981."

mained in our appellant's maximum period of confinement at the time the petition was filed, both the 60-day preparatory period and the 30-day trial period, had already been rendered meaningless. Even more significantly it was realistically quite impossible in the brief time that remained to bring this matter to even the most hurried conclusion with any semblance of due process.

Of course, in reaching our conclusion here, we were not called upon to consider what type of "good cause," *if any*, might permit a hearing to be conducted even beyond the termination of a committee-patient's initial period of confinement upon a petition filed prior thereto, albeit *somewhat* belatedly, as for example by reason of an unexpected and most marked change in his condition less than 90 days before his scheduled release date. Here, there was no attempt to show any such justification. In fact, the trial court's pronouncements make clear that none existed and that the instant delay had been due solely to the confining authorities negligent performance of their duties.[5]

Lastly, since we certainly derive no satisfaction from setting aside an order that would otherwise have been appropriate if timely made, we note that if appellant even now continues to represent a significant danger to himself or others, proceedings may yet be instituted, as they should have been at the time of the hearing here under review, in accordance with the terms of the Lanterman-Petris-Short Act.

If, as appears to be the opinion of several appellate commentators, the LPS Act does "not provide adequate protection against premature release of dangerous persons to society" (*People* v. *Poggi, supra*, 107 Cal.App.3d at p. 588 fn. 6; *People* v. *Balderas, supra*, 104 Cal.App.3d at p. 948), such shortcoming must be corrected through the legislative process, not by judicial defiance of the clear terms of a different statute. Our belief in the concept of judicial restraint, and our deference to the powers granted our coequal governmental partners, cannot be limited to those instances where, after viewing the fruits of their labors, we find them good.

---

[5]"THE COURT: I know. I am just trying to point out that Metropolitan State has in my opinion completely failed to follow the statute.

"... All I wanted to do by setting that timeframe up was to show how in my mind the hospital was totally negligent. The District Attorney's office was totally free of any involvement in this negligence by the hospital.

". . . . . . . . . . . .

"In this particular case I feel the hospital has acted with tremendous neglect in their bringing this case to the attention of the District Attorney's office. . . ."

In the interim, the affected district attorneys can, and we trust that they will, take all steps necessary to insure that the governmental authorities charged with the confinement and treatment of persons such as appellant will, in the future, attend to their assigned responsibilities in a manner sufficiently timely that a repetition of the present situation may be avoided.

The order extending appellant's commitment is reversed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied September 1, 1982, and respondent's petition for a hearing by the Supreme Court was denied October 6, 1982.