[Crim. No. 42040. Second Dist., Div. Two. Dec. 16, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
WALTER LEROY DWYER, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and John R. Gorey, Deputy Attorneys General, for Plaintiff and Appellant.

Mercer & Gallagher and Paul F. Easlick for Defendant and Respondent.

OPINION

GATES, J.—From the uncontested, but limited record before us,[1] it appears that on November 22, 1970, when respondent Walter Dwyer was eighteen years of age, he was accused in the present proceeding (Los Angeles Superior Court case No. A509798) with having committed a residential nighttime burglary. Approximately two weeks later he was again arrested and charged in a Riverside County action in three counts with possessing dangerous drugs, marijuana, and alcohol. On January 1, 1971, respondent in some fashion was convicted of these latter offenses and granted probation upon certain terms and conditions which included a period in jail and the payment of a specified fine.

---

[1]We have augmented this record on our own motion (Cal. Rules of Court, rule 12 (a)) to include the original superior court file.

On April 23, 1971, apparently as the result of a negotiated disposition, a second count alleging receipt of stolen property was added to the burglary charged in the present action and respondent pled guilty thereto. Here, too, proceedings were suspended and he was placed on probation. Again a term in the county jail was a condition thereof. Respondent seems to have successfully completed this probation[2] for his conviction was set aside on April 15, 1974,[3] in accordance with the provisions of Penal Code section 1203.4.

On August 8, 1979, respondent made application for a real estate license. Whether in connection therewith or not, the record before us reveals that on October 2, 1979, respondent's three convictions in the Riverside action were also set aside under Penal Code section 1203.4 upon an application therefor prepared by his attorney David J. Philipson.[4] In addition, and *on that same date,* a petition to seal respondent's records under Penal Code section 1203.45 was filed in the present proceeding. Supporting this request was a declaration executed by his attorney David J. Philipson on July 12, 1979, under penalty of perjury averring that to the best of counsel's information and belief, respondent had never "been convicted of any criminal offense, excluding misdemeanor traffic violations, *other than that charge[d here].* "[5] (Italics added.) Presumably, since these matters are traditionally handled ex parte, the falsity of this factual averment was not detected and the petition was granted the same day it was filed.

On October 2, 1981, the manager of the Record Control Program operated by the California Department of Justice's Bureau of Criminal Identification communicated with the trial court to advise that on the basis of the documents lodged with it, respondent did not appear to be eligible for relief under Penal Code section 1203.45, since (1) his present conviction still technically stood as a felony (but see footnote 3), and (2) he had sustained more than one conviction.

When the trial court declined to take any action on the basis of this information, *sua sponte,* on December 30, 1981, the Attorney General, acting on behalf of the People, filed a formal motion to vacate the court's earlier sealing

---

[2] Although appellant was arrested on February 18, 1974, for using and being under the influence of controlled substances (Health & Saf. Code, § 11550), no complaint issued thereon and his probation officer concluded the charges were groundless.

[3] It appears that this alternative felony-misdemeanor conviction was declared to be a misdemeanor at that time although this information was not communicated to the Department of Justice's Bureau of Criminal Identification. (See Pen. Code, § 17.)

[4] Different counsel represents respondent on this appeal.

[5] Subject to certain exceptions not presently relevant, section 1203.45, subdivision (d) provides that, it "does not apply to a person convicted of more than one offense, whether the second or additional convictions occurred in the same action in which the conviction as to which relief is sought occurred or in another action . . . ."

order. When this motion came on for hearing on January 28, 1982, it was curtly rejected with no consideration given to either its factual or legal merits.[6]

■ The basic aim of the subject legislation is clear. "Section 1203.45 was obviously enacted to achieve the salutary purpose of ameliorating the harsh and life-long social economic handicaps that accrue to persons under 21 who are convicted of a single misdemeanor offense—an act most frequently reflecting immature judgment or youthful irresponsibility rather than a criminal bent or disposition. These disadvantages are undebatable and well documented. As one comment puts it, the effective sealing of criminal records is a 'matter of conscience, not merely of convenience.' (Kogan & Loughery, Jr., *Sealing and Expungement of Criminal Records—The Big Lie,* 61 J. Crim. L.C. & P.S. 378.) . . . ." (*People* v. *Ryser* (1974) 40 Cal.App.3d 1, 7 [114 Cal.Rptr. 668] (fn. omitted). See also *People* v. *McCloud* (1977) 71 Cal.App.3d 173, 176-177 [139 Cal.Rptr. 321].)

We believe it would be difficult indeed to find any fairminded citizen who would disagree with this most compassionate and laudable social goal. By the same token, however, we find it equally unimaginable that such a citizen would conclude that either the section's "salutary purpose" or any "matter of conscience" would be served by extending such relief to one who deliberately seeks to perpetrate a fraud upon our judicial system. Whether through direct perjury, or by means of assertions made by his attorney, a defendant who intentionally causes false declarations to be filed in a court action in the hope of concealing his past failings, does but demonstrate that his rehabilitation is far from complete.[7]

In his effort to sustain the challenged order, respondent initially urges that we should affirm it on the thought that it represented a trier of fact's determination

---

[6]The entirety of the Reporter's Transcript of this "hearing" is as follows: "THE COURT: Walter Leroy Dwyer. [¶] MR. GOREY: John Gorey, Your Honor, Deputy Attorney General representing the Plaintiff and moving party. [¶] THE COURT: Go ahead. [¶] MR. GOREY: Your Honor, we filed a motion in the case to vacate a sealing order which this Court entered in October of 1979 and we have filed Points and Authorities. [¶] I would ask the Court if it's [*sic*] had an opportunity to read the Points and Authorities. [¶] THE COURT: I read it. I'm not going to do anything with it. [¶] I mean, I think it's a great waste of time, frankly. [¶] What are you going to do? Keep him from getting a real estate license? [¶] MR. GOREY: Well, Your Honor, the point is— [¶] THE COURT: The case is ten years old. [¶] MR. GOREY: Your Honor, the law is quite clear. [¶] THE COURT: Well, you can take it up on a writ. [¶] Motion is denied. [¶] MR. GOREY: Thank you, Your Honor. [¶] (Proceedings concluded.)"

[7]In this respect we note that while we would agree that the authorities charged with protecting the public through the screening and licensing of those who would deal in real estate (see generally, Bus. & Prof. Code, § 10151 et seq.) should be inclined to overlook youthful violations of the law, nonetheless, we believe that their decisions in this respect should be made with full knowledge of all the legally relevant facts. For a court improperly to deny those parties chosen to perform this task an opportunity to evaluate adequately an applicant is an act scarcely designed to improve their performance.

of factual questions. In light of the trial court's express refusal even to consider the facts or the statutory and case law on the subject (see footnote 6), this suggestion necessarily fails.

■ Equally meritless is respondent's secondary contention that both the People's motion to vacate and the present appeal are untimely. (*People* v. *McCloud, supra,* 71 Cal.App.3d at p. 176.) His reliance upon the holding of the Appellate Department of the Los Angeles Superior Court in *People* v. *Elinson* (1977) 70 Cal.App.3d Supp. 19 [138 Cal.Rptr. 881], is misplaced since to the extent that decision is inconsistent with *McCloud,* the latter prevails.[8] (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Moreover, from the point of view of judicial economy, as well as the achievement of the beneficent intendments of section 1203.45 itself, we perceive no purpose to be served by requiring that every petition to seal records must be conducted, heard, and determined in an adversary fashion as a fully contested proceeding. The public should not be required to bear the most significant costs that would be entailed if it were necessary for its many busy local prosecutorial officers to make detailed record searches in advance of every such sealing order simply to guard against that hopefully rare instance when some individual petitioner or his counsel will engage in conscious mendacity. In an era of recognized financial limits, it would not seem unreasonable to place a burden of *present honesty* upon one who seeks to seal the proofs of his *past misconduct.* Neither should it be necessary for each of the many deserving defendants to pay the greater attorney fees that would result from converting a presently ex parte proceeding into a plenary trial.

■ Lastly, and most surprisingly, respondent asks us to sustain the court's order whether made "in error or otherwise . . . on the basis of equity." He urges that his efforts to obtain a real estate license, apparently through a fraud perpetrated on the Superior Court, does but manifest the fact that he has "attempted to rehabilitate himself and become an active and productive member of society." We do not agree.

While we entertain no doubt that youthful contact with stolen property, even when accompanied by an investigation into the potential verity of the slogan, "Better Living Through Chemistry," may properly be forgiven (see footnote 7), the law regarding *sealing records* has been set by the Legislature. It may not be ignored by our courts on "equitable" grounds. (See *People* v. *Hill* (1982) 134 Cal.App.3d 1055, 1060 [185 Cal.Rptr. 64]; *People* v. *Superior Court (Hershelman)* (1979) 99 Cal.App.3d 865, 867-868 [160 Cal.Rptr. 494].)

---

[8]*McCloud* was filed only one month after *Elinson* and therefore made no direct reference thereto. Our Supreme Court denied a hearing in *McCloud.*

Furthermore, even if "equitable" considerations were germane, we would conclude that the pivotal moral issue here would be less the nature of respondent's conduct in 1970, than the deceit concerning that conduct practiced in 1979. If a person knowingly and deliberately acquired a real estate license in such a fashion, could he be expected thereafter to limit his efforts to the consummation of only those sales attainable through rigorous honesty?[9]

The order under review is reversed.

Compton, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied January 6, 1983.

---

[9]We would stress that the strong language utilized throughout this decision, *should not be read to indicate that we believe the opprobrium expressed is necessarily applicable to this respondent.* We merely wish to emphasize that in the absence of any factual determination, the present record would permit of such conclusions.