[Crim. No. 42853. Second Dist., Div. Two. Feb. 16, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
RUBEN HENRY HAWKINS, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan, David H. Guthman and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Adrian K. Panton, Deputy State Public Defender, for Defendant and Respondent.

**OPINION**

**GATES, J.**—The instant proceeding presents yet another variant of the difficulties being experienced as our prosecutorial teams and state hospital administrations strive, first to define the requirements of, and then to develop procedures to comply with, the 90-day/30-day time limitations prescribed by Penal Code section 1026.5 for petitions seeking to extend the commitments of those found not guilty of criminal offenses by reason of their insanity.[1]

In *Johns* v. *Superior Court* (1981) 119 Cal.App.3d 577 [175 Cal.Rptr. 443], a petition for extended commitment was filed 17 days beyond the 90-day time period but in an instance where it was possible to afford the committee (1) the specified 60-day preparatory period, and (2) a trial that was completed prior to the expiration of his original maximum period of confinement. The appellate court there experienced no difficulty in holding that such a minor failure to adhere to the specified, but nonjurisdictional, time limitations of section 1026.5 did not constitute cause for reversal.

In *People* v. *Pacini* (1981) 120 Cal.App.3d 877 [174 Cal.Rptr. 820], however, the petition seeking "extension" was not filed until *after* the original commitment itself had terminated. There, with equal ease, the court concluded the order that tardily purported "to extend" Pacini's already expired commitment could not stand.

In *People* v. *Hill* (1982) 134 Cal.App.3d 1055 [185 Cal.Rptr. 64], we were called upon to consider a proceeding that fell between the boundaries established by *Johns* and *Pacini*. The petition seeking to extend Hill's confinement, though filed within his original commitment period, was so belated that it totally defeated the objectives of both the 90- and 30-day rules. In fact, it allowed counsel only five court days and seven calendar days to prepare for a jury trial of a client she had never previously met and for whom examining psychiatric experts had yet to be appointed. We determined that Hill's situation was more akin to that considered in *Pacini* rather than *Johns* and, therefore, we set aside the challenged order. (*People* v. *Hill, supra,* pp. 1059-1060.)

In the proceeding now tendered for our review, the hospital authorities clearly knew from their own computations that respondent Ruben Hawkins' original commitment would expire July 11, 1982. Further, they had determined in early February of that year that an extension should be sought. Nevertheless, for unknown reasons no request therefor was made to the office of the district at-

---

[1]"Such petition *shall* be filed no later than 90 days before the expiration of the original commitment." (Pen. Code. § 1026.5, subd. (b)(2); italics added.) "The trial *shall* commence no later than 30 calendar days prior to the time the person would otherwise have been released, *unless such time is waived by the person.*" (*Id.,* subd. (b)(4); italics added.)

torney until late May. As a consequence, the petition seeking such extension was not filed until May 27, 1982, 45 days beyond the statutorily established cutoff date. In addition, respondent was not brought before the court and a counsel appointed on his behalf until June 9, 1982, only two days before any required trial should have begun.

After considering these circumstances, and entertaining argument on the issue, the court ordered the petition dismissed. The present appeal by the People followed.

█ Before turning to the merits of the challenged order, we shall briefly address appellant's contention that "no filing deadline can be determined in advance due to the impossibility of calculating a date for expiration of the commitment where the possibility of future exempted outpatient time remains." We impliedly rejected this assertion in *People* v. *Saville* (1982) 138 Cal.App.3d 970 [188 Cal.Rptr. 376], but we expressly restate our holding here in the hope of laying the issue permanently to rest.

It is true, of course, that even after a committee's initial maximum period of confinement has been established (Pen. Code § 1026.5, subds. (a)(1) and (a)(2)), its exact expiration *date* cannot be known in advance since the time, if any, he may spend in a noncustodial outpatient status cannot be predetermined. Nonetheless, the exact *day* this expiration will occur can ordinarily be determined well in advance, as it was here, by anyone with the ability to count and the willingness to do so. As a consequence, to the extent appellant's contention is based on such a claim it necessarily fails.

█ While the confused fashion in which the parties argued this matter below gives us pause, we nonetheless conclude that the trial court's ultimate decision must be sustained. Unfortunately, much time was expended discussing a committee's right to a "speedy trial" (*sic*) as if the 30 day *pre*-discharge trial date prescribed by Penal Code section 1026.5 was comparable to the *post*-information trial dates specified in Penal Code section 1382. In truth, of course, these two time periods pose exactly converse problems. In an instance of the present type, the patient is being asked to undergo *too* speedy a trial at the expense of the statutory periods allotted him for preparation and completion of any necessary hearing.[2]

In addition, certain remarks by the trial court could suggest that it felt the 30-day limit was "jurisdictional" in the classic sense, i.e., a belief that if the respondent would not willingly "waive" this right, it would be necessary to

---

[2] It was a similar confusion that led the trial court in *People* v. *Hill, supra,* to require Hill to "proclaim aloud his 'waiver' of his 'right' [*sic*] to be . . . forced to trial before he was ready." (*People* v. *Hill, supra,* 134 Cal.App.3d at p. 1058, fn. 3.)

dismiss the petition without regard to the possible existence of good cause for the delay or whether sufficient time actually remained to permit counsel to prepare for, and to complete, a full and fair trial, if one were needed, prior to the scheduled discharge date. However, when considered in light of the specific factual picture before it, we believe the trial court's ultimate conclusion was, as indeed it declared, based upon concepts of "due process" rather than "so-called jurisdiction."[3]

We are particularly moved to this determination here, since (1) the People have yet to suggest any cause, good or ill, for the tardiness of the confining authorities, (2) dilatory actions of this apparently inadvertent variety should not recur in the future if the responsible personnel take reasonable preventive steps,[4] and (3) to reinstitute these proceedings now after respondent Hawkins has been at liberty for nearly a full year would simply be unjust. (See *People* v. *Tanner* (1979) 24 Cal.3d 514, 521-522 [156 Cal.Rptr. 450, 596 P.2d 328].)

The judgment dismissing the petition for extended commitment is affirmed.

Roth, P. J., and Beach, J., concurred.

---

[3]When repeatedly pressed to indicate if it was "ruling that the language in the statute, 'the time limits of this section are not jurisdictional,' is meaningless?," the court replied, "I will say this much: Due process is meaningful. If it means that there is a conflict between so-called jurisdiction and due process in this court, this court is now of a mind to find that due process in this court's opinion is an overriding consideration. . . ."

[4]As we pointed out in *People* v. *Hill, supra,* 134 Cal.App.3d 1055, at page 1061, pending any appropriate legislative change in the law, "the affected district attorneys can, and we trust that they will, take all steps necessary to insure that the governmental authorities charged with the confinement and treatment of persons such as [respondent] will, in the future, attend to their assigned responsibilities in a manner sufficiently timely that a repetition of the present situation may be avoided." In addition, by means of an urgency bill effective August 27, 1982, the Legislature already has amended subdivision (b)(2) of Penal Code section 1026.5 to read as follows: "Not later than 180 days prior to the termination of the maximum term of commitment prescribed in subdivision (a), the medical director of a state hospital or other treatment facility shall submit to the prosecuting attorney his or her opinion as to whether or not the patient is a person described in paragraph (1). If requested by the prosecuting attorney, the opinion shall be accompanied by supporting evaluations and relevant hospital records. The prosecuting attorney may then file a petition for extended commitment in the superior court which issued the original commitment. Such petition shall be filed no later than 90 days before the expiration of the original commitment. Such petition shall state the reasons for the extended commitment, with accompanying affidavits specifying the factual basis for believing that the person meets each of the requirements set forth in paragraph (1)."